CARMAN, Appellant, v. JOHNSON, Respondent.

1. The official correspondence of the commissioner of the general land office and of the register and receiver of the United States land offices is admissible in evidence to prove the official acts of those officers.
2. In a case arising under the act of Congress of January 12, 1825, (4 Stat. at Large, p. 80,) where the entry and purchase of land at a land office of the United States is void by reason of a prior sale by the United States, the only relief to which the purchaser is entitled is the repayment of the money paid by him.
3. In no case do the various acts of Congress of March 3, 1819, (3 Stat. at Large, p. 526,) of May 24, 1824, (4 id. p. 31,) of January 12, 1825, (4 id. p. 80,) or of May 24, 1828, (4 id. p. 301,) entitle one entering land at a land office of the United States to a change of the entry and a transfer of the payment made to another tract, except in case such purchaser had made entry of a tract not intended to be entered by reason of a mistake as to the true numbers of the tract intended to be entered.
4. An entry of land in a land office of the United States, made without warrant and authority of law, is a nullity.
5. A patent obtained by fraud will enure to the benefit of the person in fraud of whose rights it is obtained.

*Appeal from Lewis Circuit Court.*

This case was formerly in the supreme court. The decision of the court is reported in 20 Mo. 108. It was an action in the nature of an action of ejectment to recover possession of a tract of forty acres, the south-west quarter of the north-east quarter of section twenty-nine, in township sixty-six, of range seven west. The facts as they appeared in evidence are substantially and briefly as follows : In September, 1846, Carman entered at the land office at Palmyra a tract of forty acres that had been previously entered by S. and W. Hunt. The mistake having been discovered, Carman, on the 26th of May, 1847, relinquished to the United States the tract so mistakenly entered, and made application to be allowed to change the entry and to enter the tract in controversy in lieu of the other. This application and the accompanying affidavits were forwarded by the register to the commissioner of the general land office. While this applica-

tion was pending, the defendant Johnson made application at the land office at Palmyra to enter the tract in controversy. He did make such entry on the 21st day of June, 1847. The entries upon the books of the receiver and register were afterwards erased by those officers on the ground that the entry by Johnson was conditional and made under an understanding with the register that Johnson was to see Carman, and if the latter insisted upon his right to the tract, then Johnson was to surrender his receiver's receipt and receive back his purchase money. There was much testimony bearing upon the nature of the conversations and understanding had and entered into between Johnson and Davis, the register. Afterwards, on February 4, 1848, Carman—having received a draft for fifty dollars from the treasury department of the United States, which sum was refunded to him for the land entered by him by mistake—entered the land in controversy. He, Carman, on the 19th of April, 1850, received a patent therefor from the United States. There was much evidence introduced, against the objection of plaintiff, consisting of official correspondence of the commissioner of the general land office, of the register and the receiver at the land office at Palmyra. The court admitted in evidence, against the objection of plaintiff, the deposition of Rush, the present register of the land office at Palmyra. In this deposition Rush set forth the usage of the land office in cases of applications for changes of entries. He stated that where such applications were made the land sought to be entered was withheld from sale until the commissioner of the general land office had acted upon the application. He also stated that no application for a change of entry had, so far as he remembered, been granted at the Palmyra office, except in case where the party made a mistake as to the numbers of the tract entered at the time of entering, and shows that he intended to enter the tract to which he asks the change to be made. If the entry was illegal on account of the land having been previously sold, the practice is to refund the purchase money and not to grant a change of entry.

The cause was tried upon an amended answer, in which the defendant set forth the circumstances under which the various entries were made and the patent of plaintiff obtained, and prayed for a decree of title. The court submitted to the jury the following issues : " 1st. What have been the value of the rents and profits of the land in controversy since the defendant entered into the possession thereof ? 2d. Was the patent issued to the plaintiff by the United States government for the land in controversy obtained by the plaintiff fraudulently ? 3d. At the time of the alleged entry by defendant of the tract in controversy, was there an application of the plaintiff pending before the land department at Washington city for a change of a prior entry by him to the tract now in controversy ? 4th. Has the defendant made any permanent improvements on said land ; if so, what ; and what what is their value ?"

The plaintiff asked the court to instruct the jury as follows : " 1. If the jury shall find from the testimony that Joseph Carman had applied for the land in controversy to the register on the 26th of May, 1847, and that his application was pending at the time of the attempted entry by Johnson, said entry itself was void by law, and the register had no authority to sell to said Johnson. The issuing of the patent to Carman vested the title in him. 2. If the jury shall find that Carman did apply to enter the land in controversy on the 26th of May, 1847, and said application was pending, that no acts of the register or of Joseph Carman after said date would be fraudulent as against Johnson. 3. Before Johnson can set up fraud against Carman, he must show that he had an interest in the land as against the United States, or some right acquired in the entry under the law of the United States ; and in that case the acts of Carman or of the register in requiring affidavit from Johnson or notice to Johnson [sic] ; nor if it should be found that Carman had deceived Johnson or made false representations to him on his erasure of his entry on the books, could be set up in his favor against the patent, unless an interest is shown in

Johnson. 4. If the jury believe from the evidence that Carman did in fact apply for a change of entry to the land in question on the 26th of May, 1847, and that said application was pending when Johnson applied to enter said land on the 21st of June, 1847, then Johnson acquired no right by his said application to enter an attempted entry, and no representations made either by Carman or Col. Benjamin Davis in relation to said application of Carman, of May 26, 1847, or in relation to Johnson's subsequent application, can be held as fraudulent against Johnson, nor can they affect the title of Carman under the patent, and they should therefore find the second issue for Carman." Of these instructions the court gave the third and refused the others.

The court, at the instance of the defendant, gave the following instructions: " 1. An application for a change of entry, in cases where by the laws of the United States no change of entry is authorized and in which no change is granted, amounts in law to no application and is void from the beginning. 2. The laws of the United States do not authorize a change of entry in cases where the United States had no title to the land entered, whether by previous sale or otherwise; but that in such cases the law only authorizes the refunding of the purchase money. 3. If the jury believe from the evidence in the cause that the plaintiff (Carman) purchased by mistake the south-west quarter of the south-west quarter of section twenty, township sixty-six, range seven, which had been previously sold to Silas and William Hunt, and to which the United States had then no title, that in such case the plaintiff could not make a legal application for a change of entry, but could only apply for refunding the purchase money; and if the jury shall so find the facts in this case, they should find the third issue in the negative; that is, that Carman, the plaintiff, had not applied for the land in controversy, unless he made some other application, of which there is no evidence in this case. 4. If the jury shall believe from the evidence in this cause that the plaintiff, or any person for him, sent false statements to the gen-

eral land office, and shall also believe that these false statements induced the department to issue the patent to the plaintiff, then the jury should find the second question submitted to the jury in the affirmative. 5. If the jury shall believe from the evidence that the plaintiff (Carman), or any person for him and at his instance and request, made false statements and representations to the general land office with regard to either his application for the land in controversy or to the purchase thereof by the defendant, and that such false statements induced the department to issue the patent to the plaintiff, then the jury should find that the said patent was fraudently obtained. 6. If the jury shall believe from the evidence in the case that the plaintiff (Carman) entered by mistake forty acres of land which had previously been sold to Silas and William Hunt, and that the plaintiff, on the 26th of May, 1847, made his relinquishment of said entry and applied to change the same to the land in controversy, and shall also believe that instead of granting the change of entry the department at Washington refunded the purchase money to Carman (the plaintiff), then the jury should find the third issue in the negative."

The jury found the issues as follows: " We, the jury, find the following issues: 1st. In the first question we find nothing due for rents and possession. 2d. We find the patent was obtained by fraud. 3d. We find there was no application to Carman for said tract in controversy at the time of Johnson's entry. 4th. The house is worth thirty-five dollars." On this verdict the court decreed the title in defendant.

*Givens*, *Dryden* and *Lipscomb*, for appellant.

I. The letters of the register and receiver, the auditor of the treasury, and of the commissioners of the general land office, were irrelevant and calculated to mislead. They should not have been read. The statement of Rush was incompetent. The cause should have been tried by the court without a jury. There is evidence showing conclu-

sively that plaintiff made his application to enter the land in question on the 26th of May, 1847, twenty-five days before defendant applied ; yet plaintiff's first and fourth instructions were refused for the reason, as stated upon their margin, that there was no evidence to predicate them upon. These instructions as well as the second should have been given. (20 Mo. 108.) Defendant's first instruction submits to the jury a question of law. So the other instructions likewise submit questions of law and are also erroneous. The prior application of plaintiff gave him a prior and better right. There is not the slightest proof of fraud. The finding of the jury is unsupported by the evidence, and is not responsive to the questions submitted.

*Bush, Green* and *Woodyard,* for respondent.

I. The land at the time of defendant's entry was vacant. There was no application by the plaintiff to enter the land, neither was there an application for a change of entry pending at the time of defendant's entry, and the register could not legally refuse to defendant the right to enter the same. Such a refusal would be a fraud upon his rights. The erasure of his entry from the books of the land office was a fraud upon his rights. The plaintiff's patent was obtained by fraud, and he held as trustee for defendant. Plaintiff entered the land with full and actual knowledge of all the facts. Judgment was properly rendered for defendant. (2 Sto. Eq. p. 395, 398 ; 9 Mo. 323 ; 7 Mo. 610 ; 16 Mo. 543.) The finding of this jury was supported by the evidence. ·

EWING, Judge, delivered the opinion of the court.

As preliminary to the main and most material point in the case, we will notice briefly an objection to certain evidence, documentary and oral, which was admitted on the trial, and which is assigned for error. The documentary evidence consisted of official letters of the commissioner of the general land office and the first auditor of the treasury, showing the action of that department upon the application of the ap-

pellant in 1847—a joint letter of the register and receiver, Mahan and Griffith, of February 1, 1850, in reply to a communication from the commissioner of the general land office in reference to the claim of the respondent to the land in controversy, in which they state that the entry of the appellant appears to be regular, through all the records of their office, with certain exceptions, which are noted, and which consist of erasures upon the books in connection with the respondent's entry; also two letters of Commissioner Butterfield, one of date April 19, 1850, to the register and receiver, in which he announces his decision in the case and that he had caused appellant's certificate of purchase to be relieved from suspension, the other April 19, 1850, to the respondent Johnson, in which he gives his reasons for the decision announced in the previous letter.

We think the evidence was properly admitted. The letters of Messrs. Young and Collins, first referred to, show the action of the department upon Carman's application, and the act of Congress by which they were governed in ordering the money to be refunded to him for the land he had erroneously entered. The other letters are the official correspondence of the commissioner and the officers at Palmyra relating to the contested case of Carman and Johnson, which present their official action in the premises and the grounds upon which that action was predicated. These documents, with others offered and read on the trial, were part of the same transaction, and were admissible as evidence of the official acts of officers, the validity of which was the very question involved.

As to the testimony of Rush relating to the usage of the office, it is sufficient to say that, so far as it was [at] all material or relevant, it was but a statement of what is obvious upon an inspection of the law governing the land officers in such cases, and what must have been the practice of the office if the law had been complied with.

The material point to be considered is whether there was any legal application for the land in controversy pending at

the time the respondent applied for and entered it in June, 1847 ; in other words, whether the previous application of Carman, in May of that year, was such as the law recognized, and had the effect to withdraw or suspend the land from sale until the proceeds of the land erroneously entered by him had been refunded by the government, and to give him the right to apply them to the land in dispute.

This question must be determined by the acts of Congress on the subject of correcting erroneous entries of land and of refunding money by the government to purchasers in such cases.

The first act on this subject is that of March 3, 1819, which provides that in every case of a purchaser of public lands at private sale having entered a tract different from that intended, and being desirous of having the error corrected, he shall apply to the register of the land office, and if it appear to the satisfaction of the register and receiver that an error has been made, and that the same was occasioned by original incorrect marks made by the surveyor, or by the obliteration or change of the original marks and numbers, or that it has, in any otherwise, arisen from mistake or error of the surveyor or officers of the land office, the case is to be reported to the secretary of the treasury, with the testimony and the opinion of the land officers thereon ; and the secretary of the treasury may direct that the purchaser shall be at liberty to withdraw the entry so erroneously made, and that the moneys which had been paid shall be applied in the purchase of other lands in the same district, or credited in the payment for other lands which shall have been purchased at the same office. (3 U. S. Stat. at Large, 526.) The next act is that of May 24, 1824, which is supplementary to the the foregoing, and extends the provisions of the act of 1819 so as to embrace cases where the error was not occasioned by the acts of the officers mentioned in the latter, and to cases of entries, not intended to be made, by a mistake of the true numbers designed to be entered ; and it also provides that the purchaser, under certain restrictions as to

quantity and time, may have the mistake corrected by making affidavit to the facts of the mistake, and that every reasonable precaution and exertion had been used to avoid the error.   This evidence, with the opinion of the land officers, being submitted to the commissioner of the general land office, he may, if satisfied of the truth of the facts, change the entry and transfer the payment from the land erroneously entered to that intended to have been entered, if unsold; but if sold, to any other tract liable to entry.   (4 U. S. Stat. at Large, 31.)   The act of May 24, 1828, is supplementary to the act of 1819, and so extends its provisions as to embrace cases where the lands have been patented.   (Ib. 301.)   The act of January 12, 1825, is entitled "An act authorizing repayment for land erroneously sold by the United States," and provides that where a purchase is void by reason of a prior sale by the United States, or for want of title thereto in the United States from any other cause, the purchaser shall be entitled to repayment of any sum paid for any such tract of land, on making satisfactory proof to the secretary of the treasury that the same was erroneously sold in the manner aforesaid by the United States, who is authorized and required to repay such sum of money.   (4 Stat. at Large, 80.)   These are the several laws on the subject of erroneous entries to which we have been referred, and they are believed to be all that have any application to the question under consideration.

Premising that the application of Carman, the appellant, upon which he relies, was made to the register on 26th May, 1847, and the entry of the respondent in June thereafter, the affidavit of Carman, accompanying his application, states that he applied at the land office at Palmyra and entered a tract of land different from that in dispute (which he describes) in September, 1846, and, being since informed that said tract had been previously purchased by the Hunts, he asks to change said entry and locate in lieu thereof the land in controversy.   Annexed to this is the affidavit of Griffith, to the effect that he believed the appellant did not know the

tract had been entered, and that he aimed to enter it in good faith. At the same time, and as a part of his application, the appellant executed a relinquishment to the United States to this land, in which he recites the act of Congress of January 12, 1825, before referred to, as authorizing repayment for the land he had erroneously purchased. These papers are accompanied also by a joint letter of the register and receiver to R. M. Young, commissioner of the general land office, referring to the erroneous purchase by Carman of Hunts' land and to the relinquishment to the government under the act of 1825.

Whether there was any legal or valid application by the appellant for the land in controversy depends upon the fact whether the land erroneously purchased previously was or was not the property of the United States at that time; if not, this fact, irrespective of the mere form of the application or what it may set forth, would seem to be decisive of the question. If his entry was void for this reason, he could only ask to have the money refunded by the government. He could not ask to withdraw the entry and have his money transferred to any other land. The act of 1825 is not supplementary or amendatory of any previous act, but is substantive and independent, and provides for a class of cases not embraced by any other law. The case of the appellant falls within the provisions of that act, because his purchase was void for want of title in the United States. This was the view of the subject taken by Commissioner Young and the officers of the treasury department, as is evident from their action on the application of the appellant in directing his money to be refunded, and in which reference is expressly had to the act of 1825. The money was refunded, and the land not actually entered until the 4th February, 1848.

It is manifest that there is no authority under the act of 1819 for refunding purchase money for land erroneously entered, because, if there was, there would have been no necessity for the act of 1825, which expressly authorizes this to be done. Instead of being refunded under the former act, it

provides that the purchaser may withdraw the entry erroneously made, and the moneys which had been paid shall be applied in the purchase of other lands in the same district, or credited on other lands previously purchased at the same office. What distinguishes this act from the subsequent ones is that the errors must be such as originate with the surveyor or land officers ; and that, if the purchaser wishes the mistake corrected, he may have it done on condition that the purchase money shall be applied to other lands. The distinguishing feature of the act of 1824 is that it provides for errors not occasioned by any act of the surveyor or land officers, and does not therefore embrace this case. Another distinction between this and other acts referred to is, that, upon the correction of the erroneous entry being made, the payment is to be transferred to the tract intended to have been entered, so that, under this act, if an erroneous entry has been made without any agency of the officers, the purchaser, if he wishes it corrected, may have it done by transferring the payment as before stated, but is not entitled to have the money refunded. It is very obvious that there is nothing in any of the acts on the subject that authorizes a change of the entry of one tract to another, unless the party has made a mistake in his numbers at the time of entering, and establishes satisfactorily to the land department that he intended to enter the tract to which he desires the change to be made. The application of the appellant shows nothing of this kind.

In this view of the acts of Congress and of the application of Carman, it follows that the land in controversy was subject to entry on the 21st June, 1847 ; and the respondent having paid his money and obtained a certificate of purchase, he acquired rights which could not be divested by the acts of the land officers or of the appellant. The application and entry of the latter was a nullity and gave him no legal or equitable right. The land, in contemplation of law, was in the same condition, when the respondent applied for it, as though the appellant had made no application or made no

attempt to become the purchaser, and the sale to him was unauthorized and improvidently made.

Upon an issue submitted to the jury on the trial of the cause, they found that the appellant had notice of the prior right of the respondent, and that the patent under which he claims title was obtained by fraud. Under such circumstances, the entry of the respondent will prevail over the patent granted to Carman, and is of course unaffected by any acts of the land officers at Palmyra or the commissioner of the general land office, which, as we have seen, were without authority of law.

Judge Scott concurring, the judgment will be affirmed.