ASTORIA, The. See Case No. 11.539.

---

## Case No. 596.

### ASTROM et al. v. HAMMOND.

[3 McLean, 107.][1]

Circuit Court, D. Michigan. Oct. Term, 1842.

TAXATION — LAND PURCHASED FROM UNITED STATES—EXECUTIVE POWER — JUDICIAL REVIEW —UNCONSTITUTIONAL LAWS.

1. Land purchased from the United States and paid for, is liable to be taxed.
[Cited in Pacific Coast Min. & M. Co. v. Spargo, 16 Fed. 350.]

2. And this applies to estates legal and equitable. The final certificate can no more be disregarded by the government than a patent.
[Cited in Pacific Coast Min. & M. Co. v. Spargo, 16 Fed. 350; Cawley v. Johnson, 21 Fed. 495; Hamilton v. Southern Nev. Gold & Silver Min. Co., 33 Fed. 566.]

---

[1] [Reported by Hon. John McLean, Circuit Justice.]

3. The executive power cannot be revised and corrected by the judicial.

[Cited in Case of Electoral College of South Carolina, Case No. 4,336.]

4. Matters of form and discretion are for executive determination.

5. An unconstitutional law can afford a justification to no one.

[Cited in Pacific Coast Min. & M. Co. v. Spargo, 16 Fed. 350.]

[6. Cited in Hamilton v. Southern Nev. Gold & Silver Min. Co., 33 Fed. 566, to the point that equitable title to lands once public passes to individuals on entry and payment, leaving legal title in the government in trust for the purchaser until the issue of a patent to him.]

In equity.

Douglass & Walker and Mr. Romeyn, for complainants.

Norvell & Goodwin, for defendant.

BY THE COURT. The complainants state in their bill that they purchased certain lands of the United States in the state of Michigan, the patent for which was issued the 1st May, 1839. That previous to the emanation of the patent, though subsequent to the entry of the land, the state of Michigan imposed a tax on the same. This tax it is alleged the state could not impose, as the land belonged to the United States, until the fee was vested in the purchaser by a patent. That the ordinance of 1787, [1 Bior. & D. 479.] and the act [Jan. 26, 1837; 5 Stat. 142] which admitted Michigan into the Union, prohibit the state from taxing the lands of the United States. The proceedings in the assessment of the tax are also alleged to have been irregular, and an injunction is prayed, &c. The case was argued as on a demurrer to the bill. The counsel for the complainant insist that any restrictions on the state, contained either in the ordinance or in the act admitting the state into the Union are void, as Michigan was admitted into the Union on the same footing as the other states; and that any restriction on the exercise of its sovereign power is void.

It is admitted that the imposition of a tax is an exercise of sovereign power. This is sometimes done indirectly by vesting the right to tax, for certain purposes, in a corporation. But the act is done under the sovereign authority.

The inhibition on the state in regard to taxing the lands of the United States, does not rest upon an act of congress, but upon a compact made between the general government and the state, and this agreement does not divest the state of any attribute of sovereignty, but withdraws a certain property from taxation for a limited time, and for certain reasons. No one doubts the competency of the state and the federal government to make such a compact; and it can only be dissolved or modified with the consent of both parties. This does not impair the sovereignty of the state, as the power of taxation remains as before the compact. It is not unusual for the state, on grounds of public policy, or for a consideration paid, to exempt from taxation certain property. This is often done in grants to corporations, but no one supposes that this is a cession of a part of the sovereignty of the state. This question was considered somewhat at large in the case of Spooner v. McConnell, [Case No. 13,245,] and it need not again be discussed. In 1832, the land in question was entered and paid for by the purchaser, and by reason of the great press of business in the land office, it is understood the patent was not issued until 1839. But there can be no doubt that the interest of the purchaser, whether it be equitable or legal, was liable to taxation. All property, by whatever name it may be denominated, is liable to be taxed. Until the patent is issued the purchaser has not the legal title, but having made his entry of the land and paid for it, the government can no more dispose of the land to another person, than if the patent had been issued. The final certificate obtained on the payment of the money, is as binding on the government as the patent. That the statute of 1836 [Laws Mich. 1835-36, pp. 57, 60] imposed a tax on these lands, has been settled by the state tribunals. The assessors were required to examine the land office of the United States, to ascertain what lands had been entered, and they were set down for taxation, so that the only question open is as to the power of the state; and that it has this power, as before remarked, there seems to be no doubt. Lands thus purchased descend to the heirs, and do not go to the administrator. They are treated as real estate, and in some states are liable to be sold on execution, before the patent is issued. When the patent issues, it relates back to the entry, and makes good any conveyance the purchaser may have made.

In Ohio, it has often been decided that lands are liable to be taxed by the state before the patent is obtained; and this has embraced land under the credit system, before it was paid for. So lands located by Virginia military warrants, are liable to be taxed before the patent. But whether, on the face of the bill, the court have jurisdiction, is the important question to be considered. It does not follow that there is no jurisdiction, from the mere fact that the defendant is auditor of state. No suit can be sustained against a state; but an unconstitutional law affords no justification to a state officer for an act injurious to an individual. The officer is not the state, and can set up no exemption under it, unless he act within the authority of law. But the judiciary cannot exercise a revisory proceeding over executive duties. In carrying a law into effect, the executive must necessarily construe it, and it is not for this or any other court to say that there is error in the construction, and a different course must be pursued. It is true, if an act be

done without the authority of law, the individual that acts is responsible; and where the mischief would be irremediable, an injunction may be interposed. But; it is only in such a case that the judicial power could be exerted. In all matters of discretion, and in regard to the forms of proceeding, it is clear, that executive acts cannot, in any form, be drawn in question by the judicial power. This power is limited to cases where by the exercise of the executive functions an injury is done to an individual; and in such cases there is a remedy at law. Upon the whole, we think the demurrer to the bill must be sustained. We think the tax was properly imposed by the state, and it does not appear from the bill that the errors stated in the assessment of the tax are of such a character as to produce great mischief, should the land be sold for the taxes. We see no probable result from the proceeding, which may not be remedied by an action at law.