CHARLES McLELLAN v. HIRAM JENNESS.

*Tenants in Common.    Trespass on the Case.    Aqueduct.
Spring.    Water.*

An action on the case sounding in tort may be maintained by one tenant in common
against his co-tenant for a misuse of the common property, though not amounting to a
total destruction of it.

The plaintiff and defendant and three others owned a main aqueduct, each having the right
to one fifth the water passing therein, which they took to their respective premises by
branch aqueducts which each owned separately. The plaintiff sued the defendant in
trespass on the case for a misuse of the water to the injury of the plaintiff. The court
charged the jury that if they found that the defendant wilfully and knowingly used
or wasted more than his one fifth part of the water which came in the main aque-
duct, or knowingly *suffered his family to do it,* for the purpose of annoying or injuring
the plaintiff, or with a wanton disregard or indifference to .the inconvenience it
might occasion to the plaintiff, and thereby the plaintiff suffered injury, then the
defendant is liable in this action. *Held* that this was correct.

ACTION on the case.    Plea, general issue.    Trial by jury.
Verdict for plaintiff, June term, 1870, STEELE, J., presiding.

The plaintiff read in evidence two deeds, showing the title of
the five owners of the aqueduct in question.    The evidence on
the part of the plaintiff and of the defendant respectively tended
to establish the facts according to their respective claims, as they
are stated in the charge of the court.    The other facts stated in
the charge of the court were not questioned, but proved by evi-
dence assumed by both parties to be correct.    After the plaintiff's
evidence was in, the defendant moved for a nonsuit on the ground
that plaintiff and defendant were tenants in common, and this ac-
tion could not be maintained.    The court overruled the motion,
to which the defendant excepted.    After the evidence was all in,
the defendant requested the court to instruct the jury, that the ac-
tion could not be sustained, and to render a verdict for defendant
to recover his costs.    To the refusal of the court to charge as re-
quested, as well as to the charge as given, the defendant excepted.
No question was made but that the charge was applicable to the
evidence, if the legal propositions it contains are correct.    The
charge was excepted to generally, and also in particular, because

the court ruled that each party was entitled to one fifth of the water brought in the main aqueduct, instead of saying one fifth of the water in the spring.

The court charged the jury as follows:

It appears, that the plaintiff and defendant and three others owned together a right to draw water from a certain spring. They also owned together a main aqueduct bringing water from this spring into the village of Sheffield, a distance of some two hundred rods and more. It also appears that each owns the right to one fifth of the water which is brought in this main aqueduct. To avail themselves of this right, each one of these five proprietors owns a branch aqueduct, which he has laid himself, connecting with the main aqueduct, in order to carry the water to his own house. And this state of things has existed ever since the water had first been brought into the village—some time in 1867 or early in 1868.

In this action the plaintiff complains that the defendant, sometime in July, 1869, so maliciously and wantonly made use of his own branch aqueduct as to prevent the plaintiff from enjoying the benefit of the water by the use of the aqueduct connecting the main aqueduct with his premises. The plaintiff claims that thereby, for the period of one week, he was a part of the time totally deprived of the use of this water, and for a part of the time deprived of the use of a considerable portion of his one fifth of the water.

The defendant insists that the plaintiff has not been deprived of it through any fault of his. And in the next place he insists that if he has been, it has been through an unintentional fault; that he was unaware that the plaintiff was deprived of any of the water that belonged to him, and has not intentionally used any water to the injury of the plaintiff beyond his own proportional one fifth share.

It appears further that the parties never accurately gauged these several branch aqueducts so as to ascertain that each conveyed to the several proprietors an exact one fifth of the water. It seems that they acted upon a tacit understanding that these aqueducts made a substantially fair division between them. Under this state of facts the plaintiff cannot complain because the defendant has, through the peculiarity of the lay of the land, or through the defendant's aqueduct being relatively larger than the plaintiff's, or his stops being in some way different, used more than his one fifth of the water, provided the defendant has in the use of this water exercised good faith towards the plaintiff. In other words, this

action is not brought on the part of the plaintiff to complain of the defendant's branch aqueduct, nor to settle how large the defendant's branch aqueduct should be; but is brought upon the theory that the defendant has not exercised good faith towards the plaintiff in making use of the aqueduct that he has. The defendant was bound to use the aqueduct in good faith towards the plaintiff and with a reasonable regard to the right of the plaintiff to use this water, to enjoy his proportionate one fifth.

The plaintiff claims that the defendant in July, 1869, altered his mode of drawing the water, and that he did it for the very purpose of annoying him and depriving him of the spring and of the water from this aqueduct. The defendant denies not only any such intention, but also making any such alteration, so as to annoy the plaintiff or cause the result the plaintiff complains of.

In these actions upon the case, like this, it is necessary, in order for the plaintiff to recover, that he should in the first place show that the defendant is under an obligation or duty towards him in respect to the matter complained of, and in the next place that the defendant has been guilty of a breach of that duty, and in the third place that an injury has consequently happened to him.

So far as the first of these three propositions is concerned, it is made out. The relation of these two parties to this property and to each other created the duty of the defendant towards the plaintiff, and on the part of the plaintiff towards the defendant, to use the water in good faith and with reasonable regard to the right of the other party to his share of it.

The question is, whether or not the defendant has been guilty of a breach of this duty, so that the plaintiff has been injured thereby. Another mode of stating this question, and perhaps a complete statement of the real issue in the case, is this: Did the defendant wilfully and knowingly use or waste more than his one fifth of the water, or knowingly suffer his family to do it, for the purpose of annoying or injuring the plaintiff, or with a wanton disregard or indifference to the inconvenience it might occasion to the plaintiff? If the defendant did so, and thereby the plaintiff has suffered injury, then the defendant is liable. Unless the plaintiff establishes that he did this, and that he thereby has suffered an injury, the defendant is not liable.

The remainder of the charge did not vary or add to the foregoing, except as to the rule of damages, in respect to which no question was raised.

*Ross & Smith*, for the defendant, maintained that one tenant in common cannot maintain trespass or case against a co-tenant

24

in regard to the common property, unless. he destroys such common property.    2 Blackstone's Com., 183 ; 2 Saunders' Rep., 47, f. and g. ; *Tubbs* v. *Richardson*, 6 Vt., 442 ; *Hurd* v. *Darling*, 14 Vt., 214.

If the action can be maintained, the law as laid down by the court is unsound.    To render one liable to an action on the case under such circumstances, there must be something more done or neglected to be done by him than merely knowingly suffering his family to use more than his one fifth, with an indifference to the inconvenience it might occasion the co-tenant.    The man who is merely indifferent in regard to a wrong act, which some member of his family, child or hired servant for example, does, comes far short of becoming a participant in the act, and hence responsible for it.    No one is responsible for the guilty acts of another, though he knows of them, unless he actively participates in the commission of those acts.    1 Bishop on Crim. Law, §§ 264, 473 to 477.

*J. Bartlett*, for the plaintiff.

The opinion of the court was delivered by

PECK, J.    The deeds given in evidence have not been furnished to the court, but the case states that the tendency of the evidence and that the facts were as stated or assumed in the charge of the court to the jury.    It appears then that the plaintiff and defendant and three others owned together a right to draw water from a certain spring.    They also owned together a main aqueduct bringing water from the spring into the village of Sheffield, a distance of some two hundred rods and more ; that each owned the right to one fifth of the water which is brought in this main aqueduct ; that to avail themselves of this right, each one of these five proprietors owns a branch aqueduct which he has laid himself, connecting with the main aqueduct, in order to carry the water to his own house ; and that this state of things has existed ever since the water was first brought into the village, some time in 1867, or early in 1868.    The jury have found that the defendant willfully and knowingly has used or wasted more than his one fifth part of

the water which came in the main aqueduct, or knowingly suffered his family to do it, for the purpose of annoying or injuring the plaintiff, or with a wanton disregard or indifference to the inconvenience it might occasion to the plaintiff; and that the plaintiff has been thereby injured by being deprived of water to which he was entitled through his aqueduct. The legal proposition in the charge, that the relation of these two parties to this property and to each other creates the duty, each to the other, to use the water in good faith and with a reasonable regard on the part of each to the right of the other to the use of his proportional share, is correct. Each should so use his own as not unnecessarily to injure the others. This does not seem to be questioned by the defendant's counsel, nor is it denied that the charge, so far as relates to the acts and conduct of the defendant himself personally, required the jury to find, in order to warrant a verdict for the plaintiff, all that is in law necessary to render the defendant liable to the plaintiff in some form. But it is insisted that in the alternative in the charge, based on the liability of the defendant for the conduct of his family in the matter, there is error. It is claimed that the charge in this respect does not require the jury to find such facts as are necessary to constitute that active participation by the defendant in the wrongful conduct of his family which is necessary to make him responsible for their acts. If the verdict is based on this alternative in the charge, the jury must have found that the defendant, for the purpose of annoying or injuring the plaintiff, or with a wanton disregard or indifference to the inconvenience it might occasion to the plaintiff, knowingly suffered his family to use or waste more than the defendant's one fifth of the water, to the injury of the plaintiff, by depriving him of his rightful portion thereof which he was entitled to have flow to his house through his branch aqueduct. The word *suffer*, used in the charge, means to *allow* or *permit*, and from the whole charge must have been so understood by the jury. Whether it was a *voluntary*, or a *negligent* permission, is not material ; for in whichever sense it is understood, it is sufficient, in connection with the other finding of the jury, to charge the defendant with the acts of his family in a matter of this kind, either upon the ground of a voluntary

permission on his part, or upon the ground of culpable negligence for not preventing or attempting to prevent the known misconduct of his family in his business and under his control.

But it is insisted that the parties are tenants in common, that the proper remedy is an action of account, and that an action on the case sounding in tort would not lie. As applicable to remedies of this character between tenants in common, the true principle is stated by KENYON, Ch. J., in *Martyn* v. *Knowllys*, 8 T. R., 145, that, " If one tenant in common misuse that which is in common with another, he is answerable to the other in an action as for misfeasance." That was an action on the case by one tenant in common against his co-tenant for cutting certain trees upon the common land. The right to maintain the action was fully recognized if the facts showed that the trees were not proper to be cut ; but the plaintiff failed to recover solely on the ground that it appeared that the trees in question were of proper age, and in other respects fit and proper to be cut. Whether one tenant in common is to be regarded as a wrong-doer so that an action of tort lies against him by his co-tenant, depends on the kind of property, the implied authority of tenants in common as between each other, the nature, tendency and effect of the act done. In relation to real estate, there is an implied authority for a tenant in common to occupy the whole for himself and co-tenant, if his co-tenant does not choose to occupy with him. Hence, if one occupies the whole or more than his share, he is liable to account for rents and profits in an action of account. But as the nature of real estate is such that the occupancy by one tenant in common does not necessarily exclude the other, if one oust or exclude the other from the possession, the latter is not bound to seek his remedy by action of account, but may recover to the extent of his title in ejectment, and thereupon at common law have his action of trespass for *mesne* profits, which in this state he would recover in the same action. *Goodtitle* v. *Tombs*, 3 Wils., 118, was such action of trespass by one tenant in common against his co-tenant, " for the recovery of damages sustained by being kept out of possession by his companion Tombs, " where the point was made that account would lie in such case, but not trespass, by one tenant in common

against his co-tenant.   But it was held that the action of trespass
was a remedy to which the plaintiff had a right to resort; and
among the reasons assigned by GOULD, J., is this, " that the plain-
tiff in this case is not confined to the very *mesne* profits only, but
he may recover for his trouble, &c.; I have known four times the
value of the *mesne* profits given by a jury in this sort of action
of trespass; if it were not to be so, sometimes complete justice
could not be done to the party injured."   WILMOT, C. J., says,
" damages are not confined to the mere rent of the premises; but
the jury may give more if they please, as my brother GOULD hath
said."   Where there is a wrong there is a remedy, and the rem-
edy should be adequate to the injury.   The injury complained of
in the case at bar results from the wrongful act or culpable negli-
gence of the defendant.   An action of account would be ill adap-
ted to redress the wrong, as the cause of action arises from tort;
and also for the reason that there could be no known or just basis
of accounting; the water of which the defendant wrongfully de-
prived the plaintiff having no such definite, ascertainable or mar-
ketable value as to furnish any rule of compensation.   The
defendant is a wrong doer; the cause of action is founded on tort,
and the appropriate remedy is for damages; the compensation or
recovery is not to be measured by the price of water, or by the
benefit received by the defendant, which may have been none at
all, but by the injury to the plaintiff from the unlawful disturb-
ance of his right by the defendant, together with such exemplary
damages as the circumstances will warrant.   An action of ac-
count would be not only inappropriate but manifestly an inade-
quate remedy.   It is insisted that an action of this character will
not lie unless there is a destruction of the subject matter of the
tenancy in common.   But it is an error to suppose, because in or-
der to maintain trespass or trover for a chattel by one tenant in
common against a co-tenant, that a destruction of the thing or
something equivalent must be shown, that it follows that no action
*ex delicto* can be maintained by the one against the other, short
of proof of a destruction of the property.   The objection to tres-
pass and trover in such cases often is purely technical, and pecul-
iar to these two forms of action: in trespass the want of an

unlawful taking; and in trover for the reason that it is not every injury to property, by one in lawful possession, that amounts to a technical conversion, although it be a ground of action on the case. In *Cubit* v. *Porter*, 8 Barn. & C., 257, (15 Com. L. R., 211,) LITTLEDALE, Justice, after saying that trespass lies by one tenant in common against his co-tenant who destroys the subject matter of the tenancy in common; as if one tenant in common destroys the whole flight of a dove-cot, or all the deer in their park; says, " in other cases, where there has not been a total destruction of the subject matter of the tenancy in common, but only a partial injury to it, waste or an action on the case will lie by one tenant in common against another; as if one tenant in common of a wood or piscary does waste against the will of the other, he (that other) shall have waste; or if one corrupt the water, the other shall have an action on the case." CHITTY, speaking of the action of trespass between tenants in common of chattels, says, " if the thing be destroyed trespass lies, and case may be supported for injuring the thing." 1 Chitty's Pl., 91./ In Comyn's Dig., Title, " Estates, (K. 8,) Tenants in Common," it is said : " If one corrupt the water the other shall have an action on the case. " Coke Lit., 200 b., is to the same effect. If so in case of corrupting the water, it must ·be so in case of one tenant in common wrongfully depriving the other of it ; and whether wholly or in part can make no difference as to the right to maintain an action *ex delicto*. To the extent the plaintiff was deprived of the water to which he was entitled, it was practically destroyed ; but whether a destruction or a misuse, is immaterial. Chit. Pl., 91. In England one commoner maintains an action on the case against another commoner for surcharging the common, whereby the plaintiff is unable to enjoy the common in so ample and beneficial a manner as he ought and otherwise would. *Hobson* v. *Todd*, 4 T. R., 43 ; although the only interest which a commoner has in the common is, in legal phrase, to eat the grass with the mouths of his cattle. In *Chesley & others* v. *Thompson*, 3 N. H., 9, it was decided that an action on the case could be maintained by the plaintiffs who were tenants in common with the defendant of a mill, for the negligence of the defendant in the

manner of the keeping of the fire in the mill by means of which the mill was burned. There is no principle that requires the destruction to be total in order to maintain the action in such case. In *Blanchard* v. *Baker et al.*, 8 Greenl., 253, it is held that one tenant in common may maintain trespass on the case against his co-tenant for diverting the water from their common mill for separate purposes of his own. So in *Odiorne* v. *Lyford*, 9 N. H., 502, it is decided that if one tenant in common of a mill erects a dam below on the same stream upon his several estate, and thereby flows the common property, to the injury of his co-tenant in respect to it, the latter may maintain an action on the case therefor against him for damages. In each of these three cases, the objection was made that the action would not lie by one tenant in common against his co-tenant, and overruled. This objection is well answered in *Odiorne* v. *Lyford*, by PARKER, C. J., in a manner applicable to the objection in this case, when he says, " the act of the defendant in flowing the common property in this case, if without right, is not a mere entry and possession as a tenant in common subjecting him to account for the profits, but is an act which tortiously deprives the plaintiff of the use of the property, and is in the nature of a destruction of the use for which it was intended." Angel & Ames, on Watercourses, lays down the same principle that is acted on in these cases. The case at bar is still stronger in favor of an action of trespass on the case than the cases already alluded to. There is an additional reason in support of such action in this case which does not usually exist in actions of this character between tenants in common. The parties by their separate branch aqueducts, which each had constructed for himself to carry his portion of the water from the common main aqueduct to his dwelling-house, had made a practical division according to their several rights. While acting under this arrangement, and thus enjoying each his portion in severalty, each had a several easement or right to have his share of the water flow through his own several aqueduct to his dwelling-house, for his several and exclusive use. To this extent, the right of the plaintiff is several, and the damage resulting from the wrongful act or culpable negligence of the defendant is not common to the

plaintiff and defendant, as in ordinary cases of actions of tort by one tenant in common against his co-tenant for injury to the common property, but is several to the plaintiff. Upon the facts in this case, clearly the ownership in common of the right to take water from the spring, and ownership in common of the main aqueduct, does not justify or excuse the defendant, or defeat the action.

Judgment affirmed.