Omaha & Grant Smelting & Refining Co. et al. v. Tabor et al. -

Mines and Mining — Trespass — Conversion — Measure of Damages — License.

1. Title in Third Person, when No Defense for Conversion of Ores.— In an action for the conversion of ore taken from plaintiffs' mine, justification not being pleaded, evidence of title in a third person is inadmissible.

2. License to One to Enter on Government Land Revoked by Sale to Another.— An entry made on public mineral land is, at most, but an entry under license of the government, and a subsequent sale to another person by the government, and the issue of a receiver's receipt for the price thereof, so divests the government of title that the license is *eo instanti* revoked, and the licensee cannot set up his previous possession as adverse.

3. A Purchaser of Ore from Trespasser Not Protected.— A purchaser of ore taken from a mine by a trespasser is guilty of conversion, though ignorant of the seller's want of title.

4. Measure of Damages for Conversion of Ore.— The measure of damages for such conversion is the value of the ore sold, less the cost of raising it from the mine after it was broken, and hauling to defendant's place of business.

5. License by Tenant in Common.— A license to dig ore in a mine given by one tenant in common extends only to his own interest therein.

6. License to One No License to Others.— Evidence that a mine-owner, being informed that persons had entered on a mining claim conflicting with his under order of court, and were taking his ore, consented that another person should join them, does not establish a license to those already engaged in mining there.

7. Instructions as to Proof of an Alleged License.— It is proper to charge with reference to such alleged license that the owner must have consented that the persons claiming as licensees should enter and take ore, from his mine.

8. Right of Possession under Deed — Parol Testimony Inadmissible.— Under General Statutes, chapter 18, section 9, providing that in the absence of an inconsistent provision in a deed it will carry the right to immediate possession of the land therein conveyed, parol evidence of an agreement that possession should not pass until the purchase money was fully paid is inadmissible.

9. In Action for Converting Ores Declarations of Plaintiff's Agent Not Admissible to Show Want of Title.— The fact that the plaintiffs, in an action for converting ore taken from their

| 13 | 41 |
| .15 | 101 |
| 15 | 266 |
| 16 | 440 |
| 13 | 41 |
| 18 | 48 |
| 18 | 95 |
| 18 | 543 |
| 13 | 41 |
| 3a | 358 |
| 13 | 41 |
| 6a | 335 |
| 7a | 193 |
| 13 | 41 |
| 9a | 518 |
| 13 | 41 |
| 24 | 123 |
| 13 | 41 |
| 25 | 875 |
| 13 | 41 |
| 17a | 217 |
| e18a | 177 |
| 13 | 41 |
| 37 | 173 |

mine, were not the owners of the whole mine, cannot be proved by the introduction of a complaint signed and verified by an agent of part of plaintiffs and another party, in a suit to enjoin the same defendants from trespassing on the mine, though such a complaint is admissible to impeach the testimony of the agent, if inconsistent therewith.

10. PROOF OF AGENCY.— The fact of agency cannot be proved by the declarations of the alleged agent alone.

### Appeal from District Court of Lake County.

Two suits, in the nature of actions in trover, brought by Horace A. W. Tabor, David H. Moffatt, Jacob J. B. Du Bois, James G. Blaine and Jerome B. Chaffee,— the first against Eddy, James and Grant; the second against the Omaha & Grant Smelting & Refining Company, in which it appears the business of the former defendants was merged.

· Plaintiffs alleged that they, with Charles E. Rider, were the owners and in the possession of the mine in the county of Lake known as the "Maid of Erin Lode," and as survey "Lot No. 568," and "Mineral Entry No. 384," from the 1st day of January, 1882, until the 11th of October, 1883. That between the 3d of July and the 31st of August, 1883, Thomas Ovens, Stanley G. Wight and others wrongfully entered upon the property and mined and took out a large quantity of valuable ore and sold the same to the defendants, who converted it to their own use; and that the ore so mined, sold and purchased by the defendants was of the value of $25,000 over and above the cost of mining, raising, hauling and treating. That about the 9th day of March, 1886, the plaintiff Jerome B. Chaffee died and David H. Moffatt became executor. That on or about the 20th of November, 1885, Charles E. Rider sold and transferred to David H. Moffatt his cause or causes of action in the premises, and that the defendants mixed and confused the ores of plaintiffs with other ores, destroyed their identity, and sold and converted them into money. Plaintiffs pray judgment for $25,000 and interest.

Defendants answer, denying all the allegations in the complaint, except the allegation of sale and assignment by Rider to Moffatt, in regard to which they say they are not informed, and the allegation that defendant had not paid plaintiffs for the ore, which is admitted.   For further defense defendants allege that, at the time of the alleged entry and wrongful taking of ore, Stanley G. Wight, Jervis Joslin, Chester B. Bullock, Boyd Park, A. W. Rucker and —— Rucker were the owners and in the possession of the Vanderbilt lode mining claim, which conflicted with and embraced a part of the Maid of Erin claim.    That the territory in conflict was in litigation between the respective parties.    That several actions at law and equity concerning it were pending and undetermined.    That at the dates mentioned in the complaint Wight and others were mining and taking ores from the Vanderbilt claim and from that part in conflict with the Maid of Erin.    That these facts were unknown to defendants; and that the ore so taken, or a part of it, was sold and delivered to the defendant at its smelting works in Leadville as ore from the Vanderbilt lode, and purchased by defendants in regular course of business. That long after the purchase of the ore by defendants they were informed that the ore was taken from the ground in dispute.    Defendants further say in answer that some time during August or September, 1883, they did purchase ores belonging to Wight, Rucker and others which were known as and called "Vanderbilt Ores," which as defendants believe were taken from the Vanderbilt claim, of which the said Wight and others were the owners and claimants and in possession under claim and color of title.

Plaintiffs, in reply, deny that Wight and others were the owners of any part of the Vanderbilt claim in conflict with the Maid of Erin claim; deny that any part of the Vanderbilt claim conflicted; and allege that prior to the date mentioned the government of the United States

had sold to the plaintiffs Tabor and Du Bois the Maid of Erin claim, and given a receiver's receipt for the same from the land office at Leadville; and aver that Ovens and Wight wrongfully went into a portion of the ground described in the complaint while plaintiffs were in possession of it, and mined and carried away the ore, which was the same ore mentioned in defendants' answer; deny that Ovens and Wight had any title to the ground from which ore was taken, and aver that all the possession they had was wrongful and illegal, and temporary, for the purpose of obtaining the ore; that the entry of Ovens and Wight was through a shaft on the Big Chief claim, not owned by either party to the controversy, and that from such shaft they worked over the boundary into plaintiffs' property; deny that defendants did not know that Ovens and Wight were taking the ore from plaintiffs' ground; and aver full notice and knowledge of the fact.

The two suits were consolidated for the purpose of the trial. The venue was changed to Lake county; the cause tried before the court and a jury, April 15, 1888; verdict for plaintiffs against Eddy, James and Grant for $3,990.45, and against the Omaha & Grant Smelting & Refining Company for $14,397.67. There are sixty-one assignments of error. Of these, thirty-eight are to the ruling of the court in admitting and rejecting testimony; twenty-two (being those from thirty-nine to sixty, both inclusive) are to the rulings of the court in giving and refusing the instructions asked; the sixty-first and last is to the refusal of the court to grant a new trial. The other facts necessary to a proper understanding of the case necessarily appear in the opinion.

Messrs. Patterson & Thomas, for appellant.

Messrs. Wolcott & Vaile, J. B. Bissell and L. C. Rockwell, for appellees.

Reed, C. The first fifteen and the eighteenth errors assigned are to the ruling of the court on the cross-examination of plaintiffs' witness O. H. Harker.

Counsel in their argument for appellants say: "The defendants sought to show by cross-examination of the plaintiffs' witnesses that at the time of the commission of the trespasses complained of, the Maid of Erin mine was owned by the Henriett Mining & Smelting Company and J. B. Du Bois, and that the original trespassers were enjoined at the suit of these parties by proper proceedings instituted for that purpose, but they were not permitted to do so." It appears that counsel for appellants (defendants below) upon the trial attempted, on cross-examination of the witness, to show that the plaintiff Du Bois owned one-half of the Maid of Erin property, and the Henriett Company the other half, and that the other plaintiffs were not owners, by showing that the witness had so stated in a legal document signed and verified by him as manager and agent in some former proceeding concerning the property, in which case an injunction was issued to restrain a trespass upon the Maid of Erin claim upon the complaint so signed and verified; but the court would not permit it to be done. An examination of the questions asked the witness, which the court did not permit him to answer, will show that none of the testimony sought went to any issue in the case, was not directed to anything in his direct testimony, and was not legitimate cross-examination. Many of the questions were in regard to facts that could only have been proved by production of records or documents. Some of the questions were in regard to suits at law and proceedings where there is nothing in the record to show he in any way participated or of which he had any knowledge; and all the testimony sought, in our view of the case, was immaterial, except in so far as it tended to discredit him or weaken his testimony by showing that his acts or declarations on previous occasions were at vari-

ance and inconsistent with his testimony at that time. This counsel had a right to do by introducing the records or documents, and asking him in regard to oral statements. It appears that in the course of the trial the papers executed by the witness, to which his attention was called, were admitted in evidence for the purpose of impeachment — the only legitimate purpose they could. serve.

It is clear that the title of the Henriett Company to one-half of the Maid of Erin claim could not have been established by parol statements or the acts of an agent in verifying papers where the facts were so stated. Counsel say this was one purpose for which the evidence was sought to be elicited on cross-examination. Had it been proper cross-examination and directed to an issue, it was incompetent for the declared purposes for which it was sought. The agency of the witness had not been established by any testimony but his own. He stated under oath at the time suit was brought that he was the manager and agent of the Henriett Company. This was insufficient. An agency cannot be established by his own declarations. *Harker v. Dement*, 9 Gill, 16; *James v. Stookey*, 1 Wash. C. C. 330. If an agency had been proved, it was that at the time of verifying the papers he was the manager and agent of the Henriett Company; and his sworn statement that he was such agent, and that his principal owned one-half of defendants' claim, could not be binding upon or in any way affect the plaintiffs in this action. And although he was the agent of plaintiffs, in charge of their work in the Maid of Erin, no statement, no matter how solemnly made by him as the agent of the Henriett Company, in favor of such company or against the title of plaintiffs, could affect either, much less conclude and estop the plaintiffs from asserting the contrary, as is urged by counsel. There was no plea of property in the Henriett Company and of entry and justification under such a title. The defendant in

this case cannot set up a title of a third person in defense unless he in some manner connects himself with it. *Duncan v. Spear*, 11 Wend. 54; *Weymouth v. Railroad Co.* 17 Wis. 567; *Harker v. Dement*, 9 Gill, 7.

It follows that the court did not err in limiting the testimony on the cross-examination to the attempted discrediting of the witness, and in refusing to admit records except for purposes of impeachment.

It is assigned for error that the court allowed plaintiff Tabor to testify to a conversation with McComb after the latter had been called and had given his version of it. Counsel put it upon the ground that a party cannot be allowed to contradict or impeach his own witness. It does not appear that Tabor was called for any such purpose or that his testimony had that effect. He was called to give his version of what occurred at that interview with McComb. A careful comparison of the testimony of both shows that of Tabor more corroborative of than contradictory to that of McComb,— at least as to the result of such conversation,— although there is some discrepancy in regard to the language used. "The party calling a witness is not precluded from proving the truth of any particular fact by any other competent testimony." 1 Greenl. Ev. § 443.

Appellants' counsel rely upon the conversation of Tabor with McComb as a license or consent on the part of Tabor to the entry and taking of the ores from the Maid of Erin ground, and contend that his license or consent as a co-owner to the extent of one-sixteenth of the Maid of Erin ground was conclusive upon himself, and also upon his co-owners of the other fifteen-sixteenths, and was equivalent to a license or consent from all, to the extent of covering the entire property. A license or consent cannot be extended by inference as a consent to enter property not spoken of or referred to in the conversation, and we can find nothing in the testimony of either McComb or Tabor in regard to entering

and taking ore from the Maid of Erin ground. It was not attempted to be shown that Ovens, Wight and Rucker entered under license or consent from Tabor. At the conversation both testify that Tabor was informed the parties had entered under an order from the court, against which he was powerless for the time. It further appears that those parties were in at the time McComb and Tabor had the conversation, and McComb only asked consent to join them. It cannot be contended that such a consent was a license to Ovens, Wight and Rucker to enter. The testimony went to the jury, and in the eighth and ninth instructions given on prayer of plaintiffs they were instructed, in effect, that they could not limit or reduce the amount to be recovered by reason of the supposed license or consent of Tabor, unless they should find that there was a consent on his part that they should enter through the Big Chief shaft and take the ore from the Maid of Erin claim; and the same proposition is submitted in the instruction given on behalf of defendants in place of No. 7, refused. These instructions on that point we think were correct, and fairly submitted to the jury the question of license or consent. And it is evident from the verdict that the jury found against any such license or consent; and, the jury having so found, it would seem unnecessary to determine whether the instructions were correct or otherwise in regard to the extent such consent, if found, should affect or modify the amount; or, in other words, whether it should cover the whole taking of ore, or be confined to the one-sixteenth owned by Tabor. The jury having found no consent or license on the part of Tabor, defendants could not be prejudiced by the instructions of the court in regard to its effect, if it were found.

The question is quite different from what it would be if it related to a transaction in the ordinary course of business relative to the joint property of tenants in common. Here it is attempted to justify a tort, and the in-

jury to the entire property by the supposed license of one joint owner. If the entry had been made by Tabor in person, and the wrongs attempted to be justified under permission from, had been done by, him, his co-tenants could have had against him the same actions at law for injuries to their interests that all are attempting to enforce against parties having no interest. It is held "an action on the case sounding in tort may be maintained by one tenant in common against his co-tenant for a mis-use of the common property, though not amounting to a total destruction of it." *McLellan v. Jenness*, 43 Vt. 183; *Agnew v. Johnson*, 17 Pa. St. 373; *Lowe v. Miller*, 3 Grat. 205. "And if one tenant in common assume to own and sell the thing held in common, the other may maintain an action of trover against him." *Burbank v. Crooker*, 7 Gray, 159; *Wheeler v. Wheeler*, 33 Me. 347; *Coursin's Appeal*, 79 Pa. St. 220; *White v. Osborn*, 21 Wend. 72; *Smyth v. Tankersley*, 20 Ala. 212. The authority of the tenant in common could not be extended to cover acts of others that he could not legally have done himself. Hence the court was correct in holding and instructing the jury that the consent or license of Tabor, if such were found, could only extend to the interest owned by him in the common property.

Appellants further assign for error the ruling of the court in admitting the testimony of Tabor when called by the plaintiffs to show that, by a parol agreement made at the time of the conveyance of the different interests by Tabor, Moffatt and Chaffee in the Henriett Company, possession of the property conveyed was to remain in the grantors until the purchase price was paid; that it never was paid, and possession under the conveyance never delivered. A part of such testimony — that which went to show that possession was to be retained — was inadmissible. "All conveyances of real estate and of any interest therein duly executed and delivered shall be held to carry with them the right to immediate posses-

sion of the premises or interest conveyed, unless a future day for the possession is therein specified." Gen. St. ch. 18, § 9; *Drake v. Root*, 2 Colo. 685. Under the statute it is certainly required that the intention to postpone the operation of a deed shall be declared in the instrument, and it cannot be proved by parol.

It follows that the instructions of the court on this point were in part erroneous; that part of the testimony going to prove that possession of the property was never delivered, and remained in the grantors, was clearly competent and proper; and the instructions of the court were proper on that point.

The admission in evidence of the deeds of reconveyance by the Henriett Mining Company and the assignment of Rider of his cause of action was not erroneous, and should be sustained — the former investing plaintiffs with full title before the commencement of suit; and of the validity of the latter, so as to enable Moffatt, assignee, to succeed to all the rights of his assignor, there can be no question under our statute.

Had defendants, by proper and competent testimony, attempted to prove the ownership of one-half of the Maid of Erin claim in the Henriett Company, it would have been inadmissible. There was no attempted justification of entry of Wight and others under the Henriett title of one-half.

"Under a plea that the close upon which the alleged trespass was committed was not at that time the close of the plaintiff, the defendant may show lawful right to the possession of the close in a third person, under whom he claims to have acted. *Jones v. Chapman*, 2 Exch. 803. "But a bare tort-feasor cannot set up in defense the title of a third person between whom and himself there is no privity of connection.". *Branch v. Doane*, 18 Conn. 233. "In justifying under a third person, the defendant must show both the title and the possession of that person" (*Chambers v. Donaldson*, 11 East, 65; *Mer-*

*rill v. Burbank*, 23 Me. 538; *Reed v. Price*, 30 Mo. 442),
and that the acts were done by that person's authority.
*Dunlap v. Glidden*, 31 Me. 510. "A defendant can
only justify upon the ground of a better right or title
than the plaintiffs have. And it has been held that mere
naked possession, however acquired, is good as against a
person having no right to the possession." *Knapp v.
Winchester*, 11 Vt. 351; *Haslem v. Lockwood*, 37 Conn.
500; *Cook v. Patterson*, 35 Ala. 102.

It will be apparent that in the judgment of this court
the effort of defendants to set up title to half of the
property in the Maid of Erin claim in the Henriett Com-
pany, without a plea to that effect, and attempting to
show privity or attempting to justify under it, was un-
warranted in law, and that no testimony should have
been taken in support of any such attempted defense.

Another defense interposed, which seems incompatible
with the former, was that certain parties named in the
answer were the owners of the Vanderbilt claim, and
that such claim conflicted with and comprised a part of
the Maid of Erin claim, and that the claim was in the
possession of the owners named under claim and color
of title; and that the ground from which the ore was
taken was in conflict between the owners of the claim,
and that divers suits in regard to the same were pending
and undetermined; that Wight and others, while en-
gaged in mining the Vanderbilt claim, took the ores from
the ground in controversy, which defendants bought as
Vanderbilt ore; and that the same was taken by the
owners of such claim while the *locus* was in their pos-
session under color of title.

It is shown in evidence that there were two entries on
the property in controversy,—the first by Wight, one
of the owners of the Big Chief in 1882, after the Maid of
Erin had a receiver's receipt from the United States land-
office, when a drift was run from the Big Chief shaft for
the Maid of Erin, and was run over the line twenty or

twenty-eight feet, into the Maid of Erin ground. The second entry was by the same party and others in the same way and upon the same ground. Neither entry was made by extending the work of the Vanderbilt claim to its exterior limits, and thus entering the Maid of Erin property. The party entering and participating in the proceeds of the ores mined were not the owners of the Vanderbilt, but seems to have been one made up for the occasion,— part of the owners of the Vanderbilt, some of the owners of the Big Chief, and, perhaps, parties owning in neither.

The plaintiffs pleaded title to the Maid of Erin claim from the government of the United States, and put in evidence a receiver's receipt for the purchase of the property, of date November 23, 1881, and a patent from the United States government dated March 17, 1884.

It has been frequently held that a patent for land emanating from the government of the United States is the highest evidence of title, and in courts of law is evidence of the true performance of every prerequisite to its issuance, and cannot be questioned either in courts of law or equity, except upon ground of fraud or mistake, and, if not assailed for fraud or mistake, is conclusive evidence of title. On the 23d of November, 1881, the government parted with its title to the Maid of Erin property, sold it to Tabor and Du Bois and gave a receipt. The government could thereafter no more dispose of the land than if a patent had been issued. "The final certificate obtained on the payment of the money is as binding on the government as the patent.  *  *  *  When the patent issues it relates back to the entry.  *  *  *" *Astrom v. Hammond*, 3 McLean, 107; *Blachley v. Coles*, 6 Colo. 350; *Poire v. Wells*, id. 406; *Steel v. Smelting Co.* 106 U. S. 447; *Heydenfeldt v. Mining Co.* 93 U. S. 634.

The patent does not invest the purchaser with any additional property in the land. It only gives him better legal evidence of the title which he first acquired by the

certificate. *Cavender v. Smith,* 5 Clarke (Iowa), 189; *Id.* 3 G. Greene, 349; *Arnold v. Grimes,* 2 Clarke (Iowa), 1; *Carroll v. Safford,* 3 How. 460; *Bagnell v. Broderick,* 13 Pet. 450; *Carman v. Johnson,* 29 Mo. 84; *Hutchings v. Low,* 15 Wall. 88. A patent title cannot be attacked collaterally. "Individuals can resist the conclusiveness of the patent only by showing that it conflicts with prior rights vested in them." *Boggs v. Mining Co.* 14 Cal. 362; *Leese v. Clark,* 18 Cal. 535; *Jackson v. Lawton,* 10 Johns. 24.

An "adverse possession" is defined to be the enjoyment of land or such estate as lies in grant, under such circumstances as indicate that such enjoyment has been commenced and continued under assertion or color of right on the part of the possessor. *Wallace v. Duffield,* 2 Serg. & R. 527; *French v. Pearce,* 8 Conn. 440; *Smith v. Burtis,* 9 Johns. 174.

The entry of a stranger, and the taking of rents or profits by him, is not an adverse possession. When two parties are in possession, the law adjudges it to be the possession of the party who has the right. *Reading v. Rawsterne,* 2 Ld. Raym. 829; *Barr v. Gratz,* 4 Wheat. 213; *Smith v. Burtis,* 6 Johns. 218; *Stevens v. Hollister,* 18 Vt. 294; *Brimmer v. Long Wharf,* 5 Pick. 131.

Possession, to be supported by the law, must be under a claim of right, and adverse possession must be strictly proved. *Grube v. Wells,* 34 Iowa, 150. The color must arise out of some conveyance purporting to convey title to a tract of land. 3 Washb. Real Prop. 155; *Shackleford v. Bailey,* 35 Ill. 391.

The title of the Maid of Erin claim was in the government of the United States until divested by its own act. There could be no adverse possession against the government. The claimants of the Vanderbilt claim entered under license only from the government. Admitting, for the purposes of this case, that the entry under the license was legal, that they had complied with the laws

of congress and the state, and that their possession extended to and was protected to their exterior lines while the fee remained in the government, when the fee passed from the government to the other party conveying the *locus*, before that time in controversy, the supposed license was revoked, and all acts and declarations of the parties themselves, whether by record or otherwise, as establishing a possessory right, were void as against the grantees of the government, and there could be no entry under color of title, except by some right by conveyance either from the government or its grantees.

The fact of the actual possession and occupancy of the Maid of Erin by plaintiffs was not seriously disputed, and the testimony was ample to warrant the jury in finding the fact.    The government had granted the land previous to the entry of Wight and others, and that such possession under a legal title was co-extensive with its bounds is so well settled that authorities in its support are unnecessary.

We do not think the court erred in refusing to admit the testimony offered in support of possessory title of the Vanderbilt in the land from which the ore was taken, nor in refusing the testimony in reference to litigation and suits pending between the parties.    Neither the title nor right of possession of plaintiffs could be attacked collaterally as attempted, and the testimony offered under the law as shown above was incompetent and inadmissible to prove either adverse possession or color of title.

From our view of the law controlling the case, as stated above, it follows that the court did not err in refusing the instructions asked on this point by the defendants, or in giving those which were given.    They were substantially correct.

The sale of ore by Wight and others, and purchase by the defendants, was a conversion.    A "conversion" is defined to be any act of the defendant inconsistent with the plaintiff's right of possession, or subversive of his

right of property. *Harris v. Saunders*, 2 Strob. Eq. 370, note; *Webber v. Davis*, 44 Me. 147; *Gilman v. Hill*, 36 N. H. 311; *Clark v. Whitaker*, 19 Conn. 319.

The defendants, by purchasing the ore, acquired no title, and are consequently equally liable for its conversion as the parties who sold it.     *Clark v. Wells*, 45 Vt. 4; *Clark v. Rideout*, 39 N. H. 238; *Carter v. Kingman*, 103 Mass. 517.     And it was a matter of no importance, so far as the legal liability of defendants was concerned, whether they were ignorant or informed of the true ownership.     *Morrill v. Moulton*, 40 Vt. 242; *Johnson v. Powers*, id. 611; *Railroad Co. v. Car Works Co.* 32 N. J. Law, 517; *Dixon v. Caldwell*, 15 Ohio St. 412; *Hoffman v. Carow*, 22 Wend. 285.     The principle *caveat emptor* applies.

A person purchasing property of the party in possession, without ascertaining where the true title is, does so at his peril, and, although honestly mistaken, will be liable to the owner for a conversion.     *Taylor v. Pope*, 5 Cold. 413; *Gilmore v. Newton*, 9 Allen, 171; *Spraights v. Hawley*, 39 N. Y. 441.

The question of the proper measure of damages is one of much greater difficulty.     We can find no conclusive adjudication in our own court.     The decisions of the different states are conflicting and irreconcilable.     Although under our code different forms of action are abolished the principles controlling the different actions remain the same as before its adoption.     Consequently the law applicable and to be administered in each case depends as much as formerly upon the nature of the case — the allegations and the distinctive form the case assumes.     In many states the courts have attempted in this action to make the rule of damage correspond to that in the action of trespass, and make it in that respect as full and complete a remedy.     In the state of New York it was long held, and perhaps still is, that the increased value of the property added by the labor and acts of defendant be-

longs to the rightful owner of the property, and the value of the property in its new and improved state thus becomes the measure of damages, but the doctrine has been questioned and severely criticised in the same state. *Brown v. Sax*, 7 Cow. 95. In trespass, damage for the whole injury, including diminution in the value of the land by the entry and removal, as well as of the value of the property removed, may be recovered; and the character of the entry, whether wilful and malicious, or in good faith, through inadvertence or mistake, is an important element — an element that cannot enter into the action of trover. In trover, the specific articles cannot be recovered as in replevin. Consequently the same rule as to increased value cannot be applied as in that action, where the specific property can be followed, and, when identified, taken without regard to the form it has assumed. It seems, on principle, therefore (and this is in harmony with the English authorities and those of many of the states), that where a party makes his election and adopts trover the rule of damage is and should be proper compensation for the property taken and converted, regardless of the manner of entry and taking; and, where the chattel was severed from the realty, regardless of the diminished value of the realty by reason of the taking. In other words, the true rule should be the value of the chattel as such when and where first severed from the realty and becoming a chattel. An examination of the authorities will show that the rule of damages to some extent depends upon the form of action — whether the action is for an injury to the land itself or for the conversion of a chattel which had been severed from the land. This distinction seems well founded in principle and reason. This view of the law is supported by *Martin v. Porter*, 5 Mees. & W. 352; *Wild v. Holt*, 9 Mees. & W. 672; *Morgan v. Powell*, 3 Q. B. 278; *Hilton v. Woods*, L. R. 4 Eq. 432; *Maye v. Yappen*, 23 Cal. 306; *Goller v. Fett*, 30 Cal. 481; *Coleman's Appeal*, 62 Pa.

St. 252; *Cushing v. Longfellow*, 26 Me. 306; *Forsyth v. Wells*, 41 Pa. St. 291; *Kier v. Peterson*, id. 357; *Moody v. Whitney*, 38 Me. 174.

We are therefore of the opinion that the rule of damage adopted, and the instructions of the court as to the measure of damage, were erroneous, and that it should have been the value of the ore sold, as shown, less the reasonable and proper cost of raising it from the mine after it was broken, and hauling from the mine to the defendants' place of business. We do not find it necessary to decide whether or not plaintiffs' counsel, by stating in the complaint that the ore taken and converted was of a certain value " over and above the cost of mining, digging and extracting the same from the ground, raising the same to the surface, hauling the same to the defendants' reduction works, and the cost of treating the same," and defendants taking issue upon it, precluded them from proving and taking greater damage upon the trial; but if it were necessary, for the purpose of determining this case, we should be inclined to so hold. In this action value is a material averment, and the plaintiffs have deliberately asserted one rule, and, issue having been taken upon it, should not be permitted to change base, and adopt upon trial another more disadvantageous to the defendants.

In this case it could not have been said the evidence was in support of the allegation or directed to an issue. The testimony should have been directed to the issue, or the pleadings amended.

Counsel for appellees, after obtaining leave from this court, assigned for cross-error the refusal of the court to allow interest on the amount found due from the time of the conversion, and the instruction of the court on that point. It is true, as stated by the learned judge, " that interest in this state is a creature of statute and regulated thereby; that it is only recoverable in the absence of contract in cases enumerated in the statute; and that

damages to property arising from a wrong or negligence
of the defendants is not one of the enumerated cases."
This could not come under the last clause of the instruc-
tion.    It is not for damage to property.    It is for the
wrongful detention of money belonging to plaintiffs.    It
is clearly distinguishable from *Railroad Co. v. Conway*,
8 Colo. 1, and *Hawley v. Barker*, 5 Colo. 118.    There
does not appear to have been any decision in this state
directly on the question presented.    The same statute
has been construed in Illinois (from which state it was
taken) as allowing interest in this class of cases from the
time of the conversion, and there has been an unbroken
line of decisions in that state from *Bradley v. Geiselman*,
22 Ill. 494, to *Railroad Co. v. Cobb*, 72 Ill. 148, in which
it is said, reviewing the decisions: "The doctrine estab-
lished by these authorities is, where property has been
wrongfully taken or converted into money, and an action
of trespass or trover may be maintained, interest may
properly be recovered.    And this is based upon the stat-
ute which authorizes interest when there has been an
unreasonable and vexatious delay of payment.    There
can be no difference between the delay of payment of a
money demand and one where property has been wrong-
fully taken, or taken and converted into money or its
equivalent.    The two rest upon the same principle."
The rule is that when the statute of another state is
adopted the construction of the statute in that state is
also adopted, and remains the true construction until
authoritatively construed by the courts of the state adopt-
ing it.    The general rule in trover is that the damages
should embrace the value of the property at the time of
the conversion, with interest up to the time of judg-
ment; and this rule has been followed in almost if not
all the states, and seems right on principle.    But our stat-
ute does not seem to have received the same construction
here as in the state of Illinois.    While in that state it
has been put plainly and squarely as interest under the

statute, in our state damage for the detention of the money equal to the legal interest upon the value of the chattels converted from the time of the conversion has been allowed, not as interest, but as damage. *Machette v. Wanless*, 2 Colo. 170; *Hanauer v. Bartels*, id. 514; *Tucker v. Parks*, 7 Colo. 62.

We think the court erred in its instructions to the jury on this point. They should have been instructed to add to the amount found as the value of the ore, as further damage, a sum equal to legal interest on the same from the time of the conversion. For the errors in assessing the damage the case should be reversed, and remanded for a new trial in accordance with the views herein expressed.

RICHMOND and PATTISON, CC., concur.

PER CURIAM. For the reasons stated in the foregoing opinion the judgment is reversed.

*Reversed.*