Bissell, P. J.,
delivered the opinion of the court.
There is so little dispute concerning the facts of this controversy, that there is substantially nothing for the court to do but to determine whether thereon a judgment ought to have been entered for the plaintiff. Of this there can be no question.
The principal discussion tendered by the appellants in support of their contention that the case ought to be reversed, is based upon the testimony contained in the record. What the court assumes to be the facts disclosed by the record will be stated without argument or attempt to justify the results deduced from the evidence of the witnesses. This will be ample to determine the rights of the parties, and a fuller his *356 tory of the case would scarcely subserve the useful purpose of. a precedent. Early in 1885, A. S. Pettit & Company were dealers in real estate, and brokers who negotiated loans on various kinds of property. A brother of the appellee, Thalheimer, had suggested to Pettit & Company that he could get money from his sister on good ten per cent real estate loans, if one should be offered them. This seems to have been the inception of the dealings between Henry Thalheimer, as the agent of his sister, Mary, and Pettit & Company. In the month o'f April, 1885, Pettit & Company applied to Thalheimer for a loan on certain real estate in Denver, belonging to Mrs. Electa Mills. In response to this application, Thalheimer called on Pettit & Company, discussed the terms of the loan, and subsequently visited the property that he might exercise his individual judgment concerning the expediency of the loan. He was satisfied with the property, and Pettit & Company furnished him an abstract of the title, which he submitted to a lawyer for examination. The title was satisfactory- It is now important to state the connection of one Joseph Pettit with the transaction. It would appear that he originally called on Pettit & Company concerning the loan to Mrs. Mills, and that it was through his suggestion that Pettit & Company began the transaction. When the loan had been agreed on between Thalheimer and Pettit & Company, the brokers made out the security and the note which was the evidence of debt, and. evidently undertook to attend to their execution, either through themselves or Joseph Pettit, with whom they were dealing, and to present them in a completed form to Thalheimer, who would pay over the money when he got these instruments. There is a good deal of controversy in the case as to the relation which Joseph Pettit bore to the respective parties. It is enough to say that whatever may have been his situation, Thalheimer was in no manner connected with him, and in no wise responsible for the part which he played in the transaction. On the 25th of April, 1885, the mortgage and the note, executed apparently by the *357 borrower, Mrs. Mills, were given to Thalheimer by Pettit & Company, and he gave them a check, payable to their order, for the amount of the loan. They assumed the distribution of the money, and received it for the papers, which they surrendered. This check which was thus delivered to Pettit & Company, payable to their order, was not indorsed by them to the order of the apparent borrower, Mrs. Mills, but at the request of Joseph Pettit, was cashed by them, and they turned over the money to Joseph, less sundry sums in which he was indebted to a third party, Shepard, and to these brokers — by way of commissions, debts, etc. Joseph took the money and left the country, and some months after-wards, when Thalheimer notified Mrs. Mills that the interest was due, she repudiated the entire transaction, pronounced the signatures to the note and mortgage to be forgeries, declined to pay them, and instituted a suit to cancel the security, as a cloud upon her title. In that suit she was successful. The present action evidently waited on the conclusion of that, and then Mary Thalheimer brought it against Pettit & Company to recover the amount of money which she had lost in the transaction, and recovered a judgment for the amount to which she was entitled, and interest on it from Feb. 19, 1887, to the date of judgment.
So far as concerns the main recovery, this judgment is abundantly justified by the record. It cannot be successfully controverted that the case shows in addition to what has already been stated that Pettit & Company acted on behalf of Mary Thalheimer in procuring the apparent execution by Mrs. Mills of the mortgage security and of the note which was the evidence of debt. Whatever their relations may have been originally to Mrs. Mills as negotiators of the loan, they assumed with reference to Mary Thalheimer, under the circumstances of this case, such a relation as compelled them to exercise reasonable care and prudence in the transaction of the business, so far as it related to the making of the instruments. It is undoubtedly clear that where such a relation is assumed, and the party is thereby charged with the duty of *358 a prudent and careful execution of his trust, he is responsible to the loser, if by his negligence the party loaning the money is induced to part with it on the strength of invalid and worthless securities: Todd v. Burke, 27 La. An., 385.
The circumstances of the transaction justified Thalheimer in his reliance upon the brokers in procuring the instruments, and he rightfully assumed that they had exercised due care and caution in seeing that they were signed by the individual to whom the loan was ostensibly made. That Pettit & Company were imposed upon by Joseph Pettit, through whom the business was done, affords them no defense. Undoubtedly that fact shows that their connection with the transaction was entirely free from suspicion and the stain of dishonesty, and that they were imposed upon by the man whom they trusted to transact the business on their behalf; but since he was their agent, and Thalheimer cannot be charged with his conduct or neglect, it is their misfortune that they must respond to the damages which Mary Thalheimer sustained.
In entering the judgment, the court permitted the recovery of interest on the money paid at the rate of eight per cent from the 19th of February, 1887, to the date of the recovery. This part of the judgment cannot be sustained. Ever since the case of D. S. P. & P. R. R. Co. v. Conway, 8 Colo. 1, it has been settled that interest can only be recovered in this state in the cases enumerated in the statute. Wherever the plaintiff’s right of action must take the form of a judgment for damages resulting from the wrong or negligence of a defendant, interest may not be included in a verdict, unless the case be brought within the priniple laid down in the Omaha and Grant Smelting and Refining Co. v. Tabor, 13 Colo. 41. Since this is true, it is evident that there is nothing in the statutes regulating the matter of interest in this state which warrants the recovery of interest by the plaintiff.
There are no other errors of sufficient gravity to require a discussion, or which, if sustained, would require a reversal of the case.
*359 The judgment will be modified by the deduction of the interest which was included in the judgment, and as thus modified the judgment will be affirmed.

Affirmed.